UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| PATRICK GRESHAM ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ARCLABS, LLC ) <br> ) <br> Defendant. ) <br> ) | Civil Action: 2:19-cv-1237-RMG <br><br> **COMPLAINT** <br><br> **For Discrimination in Violation of § 504 the Rehabilitation Act of 1973 and Title III of the Americans with Disabilities Act** <br><br> **JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

1. Plaintiff, disabled Coast Guard veteran Patrick Gresham ("Patrick") suffers from Idiopathic Thrombocytopenic Purpura (ITP), an incurable autoimmune disease that causes his immune system to attack his red blood cell platelets. Patrick had enrolled in classes at Defendant, Arclabs, LLC's ("Arclabs"), welding trade school, and brings this action seeking redress against Arclabs for its willful and unlawful violations of § 504 of the Rehabilitation Act of 1974, as amended, 29 U.S.C. § 794 and 34 CFR Part 104.4(a) ("Rehabilitation Act"), and Title III of the Americans with Disabilities Act, 42 U.S.C.A. § 12101, et seq., which expressly prohibits discrimination against a student on the basis of a disability under any program or activity which receives Federal financial assistance. While enrolled at Arclabs under the Post 9-11 G.I. Bill, Patrick was granted permission to miss classes while undergoing infusion treatments, but was disenrolled solely because of his absences while being treated for his disease and in retaliation for his insistence that Arclabs comply with the Rehabilitation Act.

1

2. This case not only provides a remedy to Plaintiff for Arclabs' statutory violations of Plaintiff's federally protected rights, but it also offers the opportunity to send a message to Arclabs and other colleges and universities that receive federal funds that this type of misconduct will not be tolerated.

## PARTIES, JURISDICTION AND VENUE

3. Plaintiff, Patrick Gresham ("Patrick") is a Coast Guard veteran over the age of 18 who suffers from Idiopathic Thrombocytopenic Purpura (ITP), a disability under the Rehabilitation Act and Americans with Disabilities Act, and who was enrolled was enrolled in welding classes for the 2015 Fall semester and the 2016 Spring semester until being wrongfully disenrolled on May 25, 2016.

4. Defendant Arclabs, LLC is a South Carolina State Training Provider whose headquarters are in Piedmont, South Carolina, and maintains a campus in Charleston County, State of South Carolina. Arclabs receives Federal funding assistance from government student loans and GI Bill tuition, which makes them subject to the requirements of the Rehabilitation Act. *See* Rehabilitation Act, as amended, 29 U.S.C. § 794. Upon information and belief, Arclabs employs more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding year.

5. This Court has federal question jurisdiction over this action pursuant to § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and 28 U.S.C. § 1331.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (c)(2), as all the conduct that gives rise to the cause of action alleged in this Complaint occurred within the geographic confines of the Charleston Division, Arclabs maintains a campus and operates as a business within the Charleston Division of the United States District Court.

**FACTUAL ALLEGATIONS**

7. Patrick served on active duty in the U.S. Coast Guard from 2008 until being honorably discharged in 2012. During his discharge physical, Patrick was diagnosed with Idiopathic Thrombocytopenic Purpura (ITP), a serious autoimmune disease that affects his platelet count. Treatment of ITP includes regular blood infusions and steroid treatments, which causes a variety of side effects, such as mood changes, sleeplessness, irritability, anxiety, headaches, and nausea. The drops in platelet count can be unpredictable and his condition is constantly being monitored. With lower platelet counts, Patrick is susceptible to excessive bleeding from cuts and bruises. Therefore, it is important for Patrick to work in uncluttered areas in order to minimize the risk of getting cut or bruised. ITP is a "disability", as defined by the Americans with Disabilities Act, 42 U.S.C. § 12102.

8. On or about September 21, 2015, using his Post-9/11 GI Bill, Patrick began attending evening welding classes, Monday to Thursday at Arclabs' Charleston campus, located at 933 Commerce Circle, Hanahan, SC 29410.

9. When Patrick enrolled at Arclabs, he made it a point to inform the school of his ITP and advised them of the unpredictable side effects that could force him to miss classes. He further stated that if he were to miss class for any reason, faculty should assume it is because of his medical condition. Arclabs accepted him into its welding school program and said they would work with him if he needed to miss classes while enrolled.

10. The students at Arclabs are assigned booths, which are shared by the day and night school classes. In early October 2015, Patrick found that the day students were leaving the booths in a dirty and cluttered condition. In addition to his health concern about being cut or bruised, Patrick wished for the students to follow Arclabs' rules that mandated that students clean up

behind themselves at the end of each class. After unsuccessfully leaving notes to the day class asking them to keep the booths clean, he complained to his night instructor, Von Robinson. In response, the day school instructor, Mike, typed a note in response that stated:

> Von,
>
> Put Mr. Gresham in booth #20 where he will no longer be sharing a booth with anyone and we can stop all his crybaby bull, and if he makes anymore accusations about me showing favoritism to other students, I will put him on a fast track out of here. From this point forward if he has any more complaints he needs to make them up with me personally. I will not have my staff bullied by a student.

A copy of this communication is attached to this Complaint as Exhibit 1.

11. Towards the end of October 2015, the side effects of Patrick's treatment caused him to miss classes. Patrick informed Ashley McAdams, Student Recruiter at Arclabs that he might need to take a leave of absence. Ms. McAdams informed Patrick it would be okay for him to start a leave of absence by submitting the leave of absence form with the return date open and complete the form by adding the return date upon his return.

12. In February 2016, Patrick successfully completed the 400-hour coursework without the need for an extended leave of absence.

13. Patrick enrolled at Arclabs for the Spring semester 900-hour class. After the start the Spring semester, Patrick's began a regimen of treatment that caused a series of side effects. The treatment and its side effects caused Plaintiff to miss classes.

14. Plaintiff looked to the Arclabs Student Handbook to determine how to handle any situation where his disability may prevent him as a student from attending classes. The only provision regarding student disability accommodations stated:

> Acceptable documentation of the mitigating circumstances that prevented the student from meeting SAP and/or attendance standards. Examples include… Medical records on physician's or hospital's letterhead that confirm illness and recuperation time; appropriate signatures required.

*See* Exhibit 2, Arclabs Student Handbook, at 34.

15. On each occasion when Patrick was forced to miss class, he submitted to the school upon his return a doctor's note excusing him from school, which the school accepted.

16. Patrick continued to find his workstation in a cluttered condition. When he complained to the night school instructor, the day school students retaliated by welding a penis into Patrick's metal work desk. A photograph of the appendage welded onto the desk is attached to this Complaint as Exhibit 3.

17. Another student informed Patrick that he overheard the clerical staff in the main office expressing hatred and hostility towards Patrick for his complaints.

18. On or about the end of April 2016, Patrick's treating physician recommended that he undergo a series of IV Infusions with an antibody therapy drug called Rituxan, which has numerous side effects, including chills, infections, body aches, and fatigue. The treatments were scheduled for the month of May.

19. Plaintiff was concerned that his treatment would cause him to miss most of his classes and was prepared to take a leave of absence for the month of May unless the school could otherwise accommodate him by modifying the attendance policies. With that in mind, Plaintiff contacted Ashley McAdams and requested an opportunity to meet and discuss his upcoming treatment to determine what accommodations/modifications the school could provide.

20. On April 28, 2016 Plaintiff and his wife Tara met with Ashley McAdams. Heidi Bray, Arclabs' Director of Education and Human Resources was on the phone for much of the meeting.

21. Plaintiff was informed at this meeting that the doctor's notes that he previously submitted did not excuse his absences. The reason given was that such mitigating factors for missing class due to medical treatment of a disability only applied to students receiving federal financial aid under the Federal Financial Aid Program, Title IV, and that other students with disabilities were not entitled to such accommodations. In other words, Title IV did not apply to Patrick.

22. At this meeting, Patrick and Tara Gresham informed McAdams and Bray about Patrick's upcoming treatment, described the side effects of the treatment, and mentioned that while there was no way to predict how he would feel at the end of each treatment, it was likely that he would need to miss classes after each IV Infusion treatment. Patrick mentioned that he was prepared to take a leave of absence for the month of May unless accommodations could be worked out. The Greshams were informed that if he was well enough to attend classes while being treated, then it would be okay for him to attend classes as much as possible. In addition, they were told that if Patrick missed classes, all he needed to do was submit a leave of absence upon his return and that it would be approved retroactively.

23. Tara Gresham, who passed the school every day on her way to work, offered to drop off any paperwork if needed when Patrick was unable to attend classes. The couple was informed that it would not be necessary as Patrick could just submit the paperwork upon his return to school. Patrick was also informed that if he showed up early and signed in, this could count towards additional time to meet the required hours.

24. Patrick began his first IV Infusion treatment on May 2, 2016 and his attendance was as follows after:
    a. May 2 to 4, 2016 ---------Absent due to side effects from May 2nd treatment.
    b. May 5 to 6, 2016 ---------Attended night classes.
    c. May 7, 2016 ---------------Attended a 8-hour Saturday make up day.
    d. May 9 to 10, 2016 --------Absent due to side effects from May 9th treatment

      e. May 11 to 12, 2016 --------Attended regular night classes.
      f. May 16 to 19, 2016 --------Absent due to side effects from May 16th treatment.
      g. May 23 to 24, 2016 --------Absent due to side effects of May 23rd treatment.
      h. May 25, 2016 ---------------Patrick was disenrolled upon his return to school.

25. While being treated, Patrick made every effort to attend classes when he could, and even attended an 8-hour make up day on May 7, 2016. On May 5 and May 11, 2016, after missing classes following his treatments, Patrick submitted leave of absence request forms as instructed by Ms. McAdams   These two leave of absence forms were accepted by Arclabs and approved retroactively without any objection, comment or concern being expressed.

26. On May 25, 2016, Patrick arrived for class and proceeded to the school office in order to complete and submit the latest leave of absence form. When he asked for the leave of absence form, he was told he needed to talk to Ms. McAdams. Upon meeting with Ms. McAdams, she informed me him that he had been disenrolled due to missing seven (7) consecutive days and failing to submit leave of absence request forms prior to missing classes.

27. Patrick asked Ms. McAdams why they disenrolled him after they discussed his accommodations at their April 28 meeting. Patrick stated that he had already submitted two leave of absence request forms and was getting ready to submit a third. Ms. McAdams informed him that he couldn't just disappear and that he should think of it like a job where he could not just show up when he pleased without letting anyone know.

28. Patrick reminded Ms. McAdams again of the April 28 meeting, at which they agreed that all he needed to do was submit a leave of absence form upon his return and it would be approved retroactively. Ms. McAdams told him that he could have had his wife come in and submit the leave of absence request forms. Patrick reminded her that his wife offered to do this at the last meeting and was informed it would not be necessary. Patrick further inquired

as to why no one contacted him to explain how they would proceed with this action and Ms. McAdams told him it was not their job to hunt him down.

29. Patrick was told that all of his records have been pulled and he was not authorized to be on their school property, so he left the premises as directed and went home.

30. Arclabs' claim that Patrick was required to submit a leave of absence request prior to being absent is clearly contrary to the agreed upon accommodations. As discussed during their April 28 meeting, it was highly likely that Patrick would be absent for some time following each IV Infusion treatment. Arclabs accepted Patrick's leave of absence request forms upon his return from being absent on two occasions without any objection, comment or concern being expressed.

31. Arclabs' claim that Patrick was disenrolled because he purportedly missed seven (7) consecutive days was a pretext. This requirement was never discussed at the April 28 meeting. Notably, because the night classes only met four times per week, Patrick did in fact return to school on the seventh day, May 25, 2016.

32. The Student Handbook requires that students failing to meet the attendance requirements will be placed on probation and that students administratively withdrawn will be notified in writing by certified mail. The Handbook states:

> If a student fails to meet the cumulative 90% attendance and/or 70% grade average at any evaluation period, he or she will be placed on probation for the next evaluation period.
> . . .
> Students will be notified when they are placed on probation and the steps necessary to be removed from probationary status. Students will also receive attendance or academic counseling from the School Director and/or Director of Education, as appropriate, when they are placed on probation. The institution will notify a student by certified mail if he or she is being administratively withdrawn for unsatisfactory academic progress."

8

*See* Exhibit 2, Student Handbook, at 33. At the time of his disenrollment, Patrick cumulative attendance was at 86.25%, and he was in the process to make up for the lost hours due to his sick leave. *See* Exhibit 4, May 12, 2016 Progress Report.

33. Prior to Patrick's disenrollment, he was never given any warning or placed on probationary status. The justification for his disenrollment was only communicated to him orally. In subsequent communications, Patrick asked the school to put the justification for his disenrollment in writing as required by the Student Handbook. Notably, Arclabs failed to comply with this requirement.

34. The Student Handbook also states that students can appeal their disenrollment and that the student will be sent a written decision within ten days of Arclabs' receipt of the appeal. The Handbook states:

> The Director of Education will assess all appeals and determine whether the student may be permitted to continue in school on a probationary status, despite not meeting the satisfactory progress requirements. The student will be sent the written decision within ten days of the Institute's receipt of the appeal. The decision of the Director of Education is final.

Exhibit 2, Student Handbook, at 34.

35. As required in the Student Handbook, Patrick submitted a written appeal.

36. Because of the previous miscommunication between Patrick and Arclabs, the hostility being directed towards him, and following the rules set forth in the Student handbook, Patrick insisted that all communications about his disenrollment be in writing. Despite Patrick's multiple requests, Arclabs refused to communicate in writing.

37. On June 2, 2016, Patrick received an email from Steve Wheat at 9:32 a.m. stating that he had to come into the school "…TODAY to discuss the terms of your appeal. Arclabs is giving

9

you an opportunity to discuss continuing your weld training, but it is up to you to come into the school TODAY to hear your options…" *See* Exhibit 5.

38. Patrick responded to Mr. Wheat by email at 10:31 a.m., stating that he was retaining an attorney to advise him on his dismissal and requested that no adverse action be taken against him while he obtained an attorney's services. *Id*.

39. Shortly after Patrick sent the email to Mr. Wheat, he received a voicemail from Heidi Bray stating she knew staff had been reaching out to him regarding his appeal and on Monday they had come to a decision that they would have to end his time in VA1 according to VA regulations.

40. On July 9, 2016, the VA informed Patrick that because he was disenrolled from Arclabs, he was required to reimburse the federal government for the tuition paid in the amount of $4,135.84. Patrick appealed this decision.

41. Where a school disenrolls a veteran attending on the GI Bill, the VA requires the school's Certifying Official to disclose any known mitigating factors associated with the disenrollment. The VA Certifying Official Handbook states:

> Mitigating circumstances are circumstances beyond the student's control that prevent the student from continuing in school or that cause the student to reduce states:
>
> Examples are:
> - An illness or injury afflicting the student during the enrollment period
>
> If mitigating circumstances are an issue for the adjustment or termination reason you select, VA-ONCE will display a Mitigating Circumstances Box.

Exhibit 6, VA School Certifying Handbook, at 80.

42. Patrick complained to the VA about Arclabs conduct and learned from a VA Official that Arclabs failed to disclose any mitigating factors for his disenrollment.

43. On information and belief, Ashley McAdams is Arclabs' Certifying Official. Ms. McAdams was familiar with Patrick's medical condition, the accommodations granted to him, his abrupt disenrollment, and the fact that his absences were due to his medical treatment. Arclabs failure to disclose these mitigating factors to the VA is indicative of Arclabs' spiteful attitude towards Patrick and further evidence that Arclabs acted with malice and deliberate indifference to Patrick's federally protected rights.

44. On August 8, 2016, Patrick received an email from the VA notifying him that the complaint against Arclabs had been "closed" and "resolved." The email attached a letter from Arclabs that was purportedly sent to Patrick on July 11, 2016. This letter enclosed a June 2, 2016 appeal decision from Arclabs approving Patrick's appeal with certain stipulations. Notably, prior to August 8, 2016, Patrick had not received, nor was he made aware of the July 11, 2016 letter and Arclab's decision granting his appeal. *See* Exhibit 7.

45. Patrick was later advised by the VA that he did not need to reimburse the VA for the funds paid for amount of $4,135.84, but Patrick lost more than 1 year of his Post 9-11 GI Bill benefits.

46. Notably, the terms set forth in Arclabs' June 2, 2016 appeal decision misstated the facts and set forth stipulations for Patrick to continue at Arclabs that not only contradicted the previously agreed upon accommodations, but also were more stringent than for students without any disabilities or handicaps.

47. In the July 11, 2016 letter, Arclabs claimed that the school attempted to call Patrick multiple times on June 1, 2016, to discuss his appeal and that he never initiated a return call or email. Contrary to Arclabs' representation to the VA, Patrick responded by email to Steve Wheat that same day, June 1, 2016, in which Patrick stated that written correspondence would be

best due to the previous problems with communication. *See* Exhibit 5. Plaintiff had still not received a written letter of disenrollment.

48. Because of Patrick's continuing requests to be accommodated and his efforts to get Arclabs to enforce its rules about keeping workspaces in a clean and uncluttered condition, Arclabs' clerical staff considered Patrick to be a troublemaker.

49. Upon information and belief, after Patrick had been disenrolled, Arclabs was contacted by a Customs and Border Patrol investigator doing a background check in connection with Patrick's job application. Arclabs told the investigator that Patrick was disruptor who would "poison the well."

50. The Arclab's Student Handbook in force at the time of Patrick's disenrollment did not contain information discussing the Rehabilitation Act or the ADA, as required by law.

51. By and through his attorney, Patrick requested a complete copy of his transcript and student file on June 6, 2016 and August 15, 2018, and his requests were ignored. *See* Exhibit 8.

52. Upon information and belief, no information about the Rehabilitation Act or the ADA was posted anywhere at the Arclabs' Charleston campus, as required by law.

53. Upon information and belief, Arclabs had not published a notice of nondiscrimination, nor had it established a grievance policy regarding the Rehabilitation Act and the ADA, as required by law.

**CLAIM FOR RELIEF**

**Violation of the § 504 of the Rehabilitation Act**

54. All prior allegations set forth above are hereby incorporated by reference.

55. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20)(B) of this title, shall, solely by reason of her or his disability, be excluded

from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

56. To state a claim for relief under Section 504, a plaintiff must allege that he or she was: (1) an "individual with a disability"; (2) "otherwise qualified" for the program; and (3) otherwise subjected to discrimination under the program "solely by reason of her or his disability." 29 U.S.C. § 794(a).

57. The term disability means, with respect to an individual, a physical or mental impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. § 12102.

58. Because Idiopathic Thrombocytopenic Purpura (ITP) substantially limits at least one of the Plaintiff's major life activities and affects the operation of two major bodily functions (the immune and circulatory systems), Plaintiff is an individual with a disability under the Rehabilitation Act.

59. Arclabs receives federal financial assistance and thus is subject to the requirements of Section 504 of the Rehabilitation Act.

60. Plaintiff was fully "otherwise qualified" to participate in Arclabs' welding program despite his disability. Plaintiff successfully completed Arclabs' 400-hour coursework his first semester. When Plaintiff advised Ms. McAdams of his concerns regarding missing class due to his disease, they agreed upon specific accommodations. Plaintiff was told that he could submit a leave of absence form upon his return from missing classes and that it would be approved retroactively. In fact, the form was approved each time it was submitted with no objection, comment, or concern being expressed.

61. Arclabs disenrolled Plaintiff solely by reason of his disability because Arclabs' wrongly believed that Patrick was not covered by the disability protection laws.

62. Arclabs discriminated against Patrick by allowing a hostile school environment to exist on the basis of his disability.

63. Arclabs further discriminated against Patrick as follows:

    a. Failed to make accommodations to Patrick regarding a clean workspace;

    b. Clerical staff in the main office expressing hatred and hostility towards Patrick among themselves and within earshot of other students in response to Patrick's complaints and his requests for accommodations;

    c. disenrolling Patrick while on medical leave due to treatment in retaliation for Patrick's insistence that Arclabs follow the law;

    d. pulling all of Patrick's records and denying him access to the premises following his disenrollment;

    e. not placing Patrick on probationary status as required by the Student Handbook or otherwise warning him that his attendance was a problem until after they disenrolled him;

    f. not sending Patrick the basis for his disenrollment in writing as required by the Student Handbook;

    g. failing to send Patrick a written decision on his appeal, as required by the Student Handbook;

    h. taking the position that it only needed to accommodate students receiving federal financial aid under the Federal Financial Aid Program, Title IV;

    i. failing to disclose to the VA any mitigating factors associated with Patrick's disenrollment;

j. failing to disclose in Arclabs' Student Handbook or post any information about the ADA or section 504 of the Rehabilitation Act;

k. failing to assign an employee at Arclabs to be responsible for ensuring compliance with these regulations and ensuring students with disabilities are properly accommodated;

l. failing to publish a notice of nondiscrimination, nor establishing a grievance policy;

m. advising at least one third party that Patrick was a disrupter who would "poison the well;" and

n. refusing to provide to Patrick a copy of his school file when asked by and through his lawyer.

64. Arclabs' decision to disenroll Patrick and its other acts of discrimination were done intentionally and with malice and deliberate indifference to Patrick's federally protected rights.

65. As a result of Patrick's disenrollment, he suffered lost educational opportunities and lost income.

66. As a result of Arclabs actions, Patrick has suffered and will continue to suffer harm.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment in favor of Plaintiff and against Defendant and award the following relief:

a. actual and special damages, including damages for loss of education benefits; professional and educational opportunities, loss of income potential, loss of compensable

15

    economic and non-economic damages caused by Defendant in violation of the Rehabilitation Act;

b. Past and future compensatory and consequential damages, including lost income, loss to reputation, psychological harm, emotional distress, anxiety, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation against Defendant;

c. Punitive damages;

d. Attorney's fees and costs of this action; and

e. That he be granted and awarded such other and further relief as to the Court seems just and proper.

          Respectfully submitted:

          Law Office of Robert M. Turkewitz, LLC

          s/ <u>Robert m. Turkewitz</u>
            St. Andrews Law Center
            768 St. Andrews Blvd.
            Charleston, South Carolina 29407
            Federal ID No.:  4902
            T: (843) 628-7868
            F: (843) 277-1438
            rob@rmtlegal.com
            www.rmtlegal.com

          Brian M. Knowles, Esquire
          KNOWLES LAW FIRM, PC
          768 St. Andrews Blvd., Charleston, SC 29407
          Federal ID No.:  9694
          T:  843-810-7596
          F:  877-408-1078
          brian@knowlesinternational.com
          www.knowlesinternational.com

April 29, 2019
Charleston, South Carolina        ATTORNEYS FOR PLAINTIFF